**Reinaldo HERNANDEZ FLECHA et al., Plaintiffs, Appellees,**

v.

**Hon. Carlos QUIROS, etc., Defendant, Appellee,**

**F. Ray Marshall, U. S. Secretary of Labor, et al., Defendants, Appellants.**

**No. 77–1401.**

United States Court of Appeals, First Circuit.

Argued Oct. 4, 1977.

Decided Dec. 28, 1977.

Jonathan H. Waxman, Acting Counsel for Litigation, Washington, D. C., with whom Carin Ann Clause, Sol. of Labor, Nathaniel Baccus, III, Associate Sol. for Employment and Training, Washington, D. C., Morton J. Marks, Regional Atty., Santurce, P. R., Mary Asseo, Hato Rey, Puerto Rico, and Steven M. Guttell, Attys., Washington, D. C., were on brief for defendants, appellants.

S. Steven Karalekas and Thomas J. Bacas, Washington, D. C., on brief for Farm Labor Executive Committee, amicus curiae.

Luis N. Blanco Matos, Hato Rey, P. R., with whom Salvador Tio, Rio Piedras, P. R., Howard S. Scher, Burton D. Fretz, Wash-

ington, D. C., and Alan J. Rom, Boston, Mass., were on brief, for appellees.

Before COFFIN, Chief Judge, ALD-RICH, Circuit Judge, and CRARY, District Judge.*

ALDRICH, Senior Circuit Judge.

In this action for an injunction, and a declaration of rights, there has been a considerable past history that is sought to be used by the various parties to reflect on others. We disregard it as irrelevant, and turn to the single question of substance, which, we agree with plaintiff, appellees, is not moot. This is whether Puerto Rican workers, because of their special demands, are to be excluded from the pool of "available" domestic workers when determining the number of alien workers needed for certain migrant agricultural work. The district court issued a preliminary injunction requiring defendant United States Secretary of Labor, U.S. Secretary, to declare the Puerto Rican workers available, and enjoining defendant Commissioner of the Immigration and Naturalization Service, INS, from issuing temporary work visas. We stayed the injunction, and now consider the merits. Plaintiffs are agricultural workers residing in Puerto Rico. A further named defendant is the Puerto Rico Secretary of Labor, P.R. Secretary.

The problem arises in this manner. Certain private activities in the several states, in this instance apple growing in a number of Eastern states, require many temporary workers, here apple pickers, for a short and specific interval. The demand often exceeds the local supply, and the growers look elsewhere, including abroad. We start with a given, that it has always been a Congressional policy to prefer domestic workers in all fields. However, it is also necessary to consider would-be employers, although in case of conflict, wide leeway favoring domestic workers is given the U.S. Secretary. *Elton Orchards, Inc. v. Brennan,* 1 Cir., 1974, 508 F.2d 493 (apple growers); *cf. Silva v. Secretary of Labor,* 1 Cir., 1975, 518

F.2d 301 (live-in maid). Domestic workers are preferred in the manner of hiring, so long as there are any "who are able, willing, qualified, and available." 8 U.S.C. § 1182(a)(14)(A). In order further to protect domestic workers and their working conditions, as required by subsection (14)(B), employers of both domestic and alien workers are obliged to maintain certain minimum wage and other standards determined by the U.S. Secretary, hereinafter U.S. conditions. 8 U.S.C. §§ 1101(a)(15)(H)(ii), 1184(c) (1970); 20 C.F.R. §§ 602.10–10b (1977). At the same time, under the statute, employers are protected by permitting the admission of aliens when there is no supply of domestic workers who are "able, willing, qualified, and available." The question is whether a domestic worker who demands more than the U.S. conditions falls within this statutory definition.

The present difficulty was created by the Puerto Rico legislature's enactment of Public Law 87 of 1962, as amended in 1977, forbidding the P.R. Secretary to contract with the U.S. Secretary to release Puerto Rican residents for itinerant work except upon conditions, hereinafter P.R. conditions, more onerous to the employer than those set by the U.S. Secretary. Since none could come without his permission, the P.R. Secretary's insistence upon these conditions led to a determination by the U.S. Secretary that no Puerto Rican workers were "available." The U.S. Secretary accordingly computed the quotas of apple pickers without reference to Puerto Rico. Plaintiffs responded with this suit, and obtained the preliminary injunction which we stayed.

Plaintiff, at the outset, contend that P.L. 87 and its constitutionality are not involved. In a sense, this is so. The basic fact which the U.S. Secretary faced was the simple one that no Puerto Rican worker would come unless the employer agreed to meet conditions exceeding the U.S. conditions. We may agree with plaintiffs that the reason why is purely secondary; the question is the same whether the Puerto Rican work-

---

* Of the Central District of California, sitting by designation.

ers' insistence upon P.R. conditions was made for them by the legislature, or by the P.R. Secretary, or was due to insistence by a union to which they all belonged, or was merely the result of Puerto Rican workers not finding the U.S. conditions sufficiently attractive, and demanding more on an individual basis. Our decision covers all of these matters, and the statute only incidentally.

It is plaintiffs' position that the U.S. conditions are merely a minimum, and that they neither forbid employers offering more, nor employees from seeking more. We agree with this, but it does not follow, as plaintiffs would seem to think, that if the workers are unwilling—or unable—to come unless they receive more, they meet the section 1182(a)(14)(A) definition. If they did, it requires but little reflection to see that the statute would be used to require employers to meet whatever demands might be made by domestic workers. The effect, indeed, the necessary effect would be that the alien market would never be reached—the employer would have to pay whatever the domestic workers sought, it being obvious that if there were no limit on the price that could be asked, workers could always be found. In fact, the right of workers to demand what they wish is the whole basis of plaintiffs' claim—that the U.S. Secretary's interpretation means that "the [U.S.] Secretary usurps the power of the domestic worker to negotiate . . ." [1]

The statute, however, is not a one-way street. The Court of Appeals for the Third Circuit, recently faced with a somewhat similar situation in the Virgin Islands, recognized that there are two statutory purposes.

"The common purposes are to assure [employers] an adequate labor force on the one hand and to protect the jobs of citizens on the other. Any statutory scheme with these two purposes must inevitably strike a balance between the two goals. Clearly, citizen-workers would best be protected and assured high wages if no aliens were allowed to enter. Conversely, elimination of all restrictions upon entry would most effectively provide employers with an ample labor force." *Rogers v. Larson,* 3 Cir., 1977, 563 F.2d 617, 626.

The attempt in plaintiffs' brief to read the statute otherwise is based upon the claim that since the Puerto Rican workers are fully prepared to go if the P.R. conditions are met, they are "ready, willing and able," and hence are "available." [2] Quite apart from conflicting with what we regard as the statute's intent, this is giving the word "willing" an unnatural meaning. A person who is willing only if certain conditions are met is not "willing and available." On the contrary, by hypothesis, he *would be willing, if.* To carry plaintiffs' ignoring conditions to its logical extent, we ask whether the cynic who said that every man has his price would say that every man is "willing and available"? If so, the phrase is meaningless. If not, the injection of any condition is a denial of ready willingness; there is no intermediate position.

We assume, for present purposes only, that Puerto Rico can forbid its residents to accept employment elsewhere except upon conditions determined by Puerto Rico. Even so, Puerto Rico cannot pass laws, such as minimum wage laws, for other jurisdictions. The Puerto Rico legislature may be dissatisfied with the U.S. standards, but it cannot reject those standards and at the same time insist on the benefits of the federal statute. The purpose of the statute and regulations relating to temporary workers is not to open the door for bargaining nationwide—if by Puerto Rico, it could be by every state—but to provide a manageable scheme, which that clearly would not be, that is fair to both sides. Puerto

---

1. "Negotiate" here means only negotiate up. A recent Puerto Rico Superior Court decision denies power to negotiate away any of the P.R. conditions. *Villanueva v. Quiros,* Civil No. PE 77–1304 9/26/77.

2. "Puerto Rican workers were in fact, 'available' to do apple harvest work because they were physically ready, willing and able to do such work."

Rico may participate, or not, as it chooses, but it cannot set the terms. It is Congress which, under the Constitution, has the final say in matters of interstate commerce, and its lawfully delegated agencies that determine fair conditions of employment in interstate commerce, and neither Puerto Rico, nor any individual state.

There remains the question of relief. Technically, this is an appeal from the granting of a preliminary injunction. With the passage of the 1977 apple season, the granting of that injunction is obviously mooted. What is not mooted is the meaning of the federal statute and regulations, and since this is a question of law, not of fact, we may decide the merits. The case is remanded to the district court to enter a judgment in an appropriate form declaring that a worker who is not able and willing to enter into a contract of employment upon the U.S. conditions is not available within the statutory meaning when the U.S. Secretary is certifying the need for temporary foreign workers to the INS.