Juan Valderrama RIOS, et al., Plaintiffs,

v.

Secretary of Labor F. Ray MARSHALL, et al., Defendants.

No. 79 Civ. 5711.

United States District Court,
S. D. New York.

Nov. 23, 1981.

Mid-Hudson Legal Services, Inc., Farmworker Project, Howard Schell Reilly, Anthony Szczygiel, Newburgh, N.Y., for plaintiffs.

Thomas H. Belote, Sp. Asst. U.S. Atty., New York, N.Y., Charles S. Fax, Chapman, Duff & Paul, Washington, D.C., Joseph Kevin McKay, Hays, St. John, Abramson & Heilbron, New York City, Gretchen Coll-Marti, Puerto Rico Legal Services, Migrant Div., Rio Piedras, P.R., Kenneth Hart, Jr., State of Florida Dept. of Labor & Employment Sec., Tallahassee, Fla., Jeffrey Slonin, Asst. Atty. Gen., N.Y.S. Dept. of Law, New York City, S. Steven Karalekas, Thomas J. Bacas, Charles, Karalekas & Bacas, Washington, D.C., John Witmeyer, Charles Booth, Ford, Marrin, Esposito & Witmeyer, New York City, Daniel Sullivan, Murray, Hollander & Sullivan, New York City, Morris Kletzkin, Friedlander, Misler, Friedlander Sloan & Herz, Washington, D.C., Chales Kelso, Ann Margaret Pointer, Fisher & Phillips, Atlanta, Ga., Sanford A. Bell, Teitler & Teitler, New York City, for defendants.

## OPINION

GAGLIARDI, District Judge.

This action was commenced by thirty-eight migrant farmworkers, individually and on behalf of a class of all migrant farmworkers who are citizens of the United States and who from 1975 to 1979 worked or sought to work in the annual New York apple harvest. The named plaintiffs are Puerto Ricans and southern blacks. They allege that seven New York apple growers and two New York apple growers' cooperatives (the "New York apple defendants") and their agents, including two Florida sugar cane growers' associations (the "Florida sugar defendants"), conspired among themselves and with an instrumentality of the government of Jamaica to replace plaintiffs in the New York apple harvest with temporary foreign workers from Jamaica. Also named as defendants are officials of the United States Department of Labor, the United States Immigration and Naturalization Service, and the New York, Florida and Puerto Rico Departments of Labor, who plaintiffs allege failed to fulfill their statutory duties and aided the aforementioned conspiracy in violation of plaintiffs'

rights under the antitrust and civil rights laws. Plaintiffs' claims arise under the Sherman Act, 15 U.S.C. §§ 1, 2, the Clayton Act, 15 U.S.C. § 15, the civil rights laws, 42 U.S.C. §§ 1981, 1983, 1985, the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, and the Wagner-Peyser National Employment System Act, 29 U.S.C. § 49 *et seq.* Plaintiffs seek declaratory, injunctive and monetary relief.

Pending before the court are motions by the following defendants to dismiss plaintiffs' claims: (1) the New York apple defendants;[1] (2) the Florida sugar defendants;[2] (3) William H. Meranda; (4) the British West Indies Central Labour Organization ("BWICLO") and Harold F. Edwards, BWICLO's Chief Liaison Officer in the United States; (5) the Government of Jamaica; (6) Wallace E. Orr, Secretary of the Florida Department of Labor and Employment Security; and (7) Carlos S. Quiros, Puerto Rico Secretary of Labor.

*Introduction*

At issue in this action are the interstate clearance system for recruitment of agricultural workers and the temporary foreign worker certification program which were established under the authority of the Wagner-Peyser Act, 29 U.S.C. § 49 *et seq.* The interstate clearance system and the certification program are the principal elements of "a complex statutory structure designed to facilitate the employment of domestic workers for seasonal agricultural labor, and to permit the use of foreign nationals temporarily admitted to the United States to work for a specific employer if domestic workers are unavailable." *Elton Orchards, Inc. v. Brennan*, 508 F.2d 493, 495 (1st Cir. 1974). Plaintiffs' claims and the issues decisive of defendants' motions to dismiss cannot be understood without prior explanation of the statutory scheme.

The Wagner-Peyser Act authorizes the establishment of a federal employment service within the Department of Labor to function in conjunction with state employment services which receive federal funding. Under the regulations promulgated pursuant to the Wagner-Peyser Act, an employer who wishes to use state employment agencies to secure workers for temporary employment must inform the local office of the state agency of the employer's need for temporary workers and must file with that office a job offer that meets federally established minimum standards. 20 C.F.R. 604.2(c). The state agency will then seek to place local workers with the participating local agricultural employer. 20 C.F.R. § 604.2(b). When local workers are not available, the local agency uses the interstate clearance system to recruit through agencies in other states workers throughout the United States. 20 C.F.R. §§ 602.2(c) and (d). Workers recruited through the state agencies, whether intrastate or interstate, are protected by a series of regulations prescribing minimum working and living conditions, including free housing, transportation and daily subsistence from the place of recruitment to the place of employment and back, a guarantee of work during three-fourths of the days covered by the work contract, workmen's compensation insurance, and three meals per day. 20 C.F.R. §§ 655.202(b)(1), (2), (4), (5), (6).

When an employer is unable to secure domestic workers through the interstate clearance system, that employer may petition the Immigration and Naturalization Service (the "INS") for admission of aliens to serve as temporary agricultural laborers. 20 C.F.R. § 655.201(a)(1). Aliens are permitted to enter the country to work as "nonimmigrants" only "if unemployed per-

---

**1.** The New York apple defendants are Altamont Farms, Inc., William Paladino, Sr., Merritt Hart, S & A Chaisson & Sons, Inc., Leland J. Behnke, Elizaville Fruit & Freezer, Inc., Charles Ferrone, A. Goode & Son, Adriane F. Goode, Michael Nadone, Stanely Orchards, Inc., Stanley Cohn, Lester Cohn, Mid-Hudson Growers Co-Op, Inc., Charles Andola, Valley

Growers Co-Op, Inc., Ashton Hart, Patrick Russo, Joseph Russo, and the Farm Labor Executive Committee.

**2.** The Florida sugar defendants are the Florida Fruit & Vegetable Association, George Sorn, the Florida Sugar Producers Association, and Earl Morrison.

sons capable of performing such service or labor cannot be found in this country." 8 U.S.C. § 1101(a)(15)(H)(ii).[3] Specifically, INS regulations require that an employer's petition for the admission of aliens to perform temporary work be accompanied by "a certification from the Secretary of Labor ... stating that qualified persons in the United States are not available and that the employment of the beneficiary will not adversely affect the wages and working conditions of workers in the United States similarly employed...." 8 C.F.R. § 214.-2(h)(3). Prospective employers of temporary foreign workers may not offer the foreign workers terms of employment more favorable than those offered domestic workers. 20 C.F.R. § 655.202(a). To further insure that domestic agricultural workers will not be disadvantaged by the admission of temporary foreign workers, the Department of Labor sets an annually revised "adverse effect wage rate" for specific states. 20 C.F.R. § 655.200(b). The adverse effect rate is defined as the prevailing wage rate of similarly employed domestic workers unless the use (or nonuse) of aliens has depressed the rate. 20 C.F.R. §§ 655.-200(b), 655.207(a). An agricultural employer seeking to import foreign workers must first file with the state employment service an offer of employment to domestic workers at a wage rate not lower than the adverse effect wage rate. 20 C.F.R. § 655.-202(b)(9). It is also specifically provided that if the workers are paid on a piece rate basis, the average hourly earnings must at least equal the adverse effect rate. 20 C.F.R. § 655.202(b)(9)(ii).

### Discussion

### I. New York Apple Defendants

Plaintiffs allege that the New York apple defendants and their agents conspired to discourage plaintiffs from competing for or accepting jobs in the annual harvest by offering domestic workers low wages and discriminatory working conditions with the purpose of replacing domestic workers with foreign workers willing to work long hours at low wages. This allegedly conspiratorial pattern of conduct serves as the basis of plaintiffs' three antitrust claims and one civil rights claim against the New York apple defendants. These defendants now move to dismiss plaintiffs' claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Fed.R. Civ.P., or in the alternative for a more definite statement pursuant to Rule 12(e). Defendants further move to dismiss a certain portion of plaintiffs' claims under the statute of limitations and to dismiss the claims of several plaintiffs under the doctrine of res judicata. Finally, one of the defendant apple growers, the Farm Labor Executive Committee, moves to dismiss pursuant to Rule 12(b)(2) for lack of in personam jurisdiction.

### A. Antitrust Claims

■■ The principal thrust of plaintiffs' claims[4] under the antitrust laws is that the defendants conspired to monopolize the New York apple harvest job market in violation of § 2 of the Sherman Act is insufficient since plaintiffs have failed to allege that the New York apple defendants possess monopoly power in any relevant market. Monopoly power means power to control prices or exclude competition in a relevant market. To prevail on their § 2 claim, plaintiffs must show that the New York apple defendants wilfully acquired or maintained monopoly power in the relevant market. *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966); *Broadway Delivery Corp. v. United Parcel Serv.*, 651 F.2d 122, 126–27 (2d Cir. 1981). Plaintiffs have not alleged what proportion of any relevant employer market is controlled by the New York apple defendants,

---

**3.** According to 8 U.S.C. § 1184(c), "[t]he question of importing any alien as a nonimmigrant under section 1101(a)(15)(H) or (L) of this title in any specific case or specific cases shall be determined by the Attorney General, after consultation with appropriate agencies of the Government, upon petition of the importing employer...." The Attorney General has delegated authority in this area to the Commissioner of Immigration and Naturalization, who has in turn delegated responsibility to the Secretary of Labor. 8 C.F.R. § 214.2(h)(3).

**4.** Plaintiffs advance claims under § 1 and § 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and § 4 of the Clayton Act, 15 U.S.C. § 15. Plaintiffs' § 1 claim alone states a claim upon which relief can be granted. Plaintiffs' claim that

defendant apple growers and their agents conspired to restrain the domestic job market for the annual New York apple harvest during the years 1975 to 1979 by offering wage rates that were below competitive rates in the relevant market. Specifically, plaintiffs assert that the piece rates offered uniformly by the apple growers, while comporting with the adverse effect rates, were artificially depressed by the New York apple defendants. In addition, plaintiffs allege that the New York apple defendants conspired against them by refusing to arrange for travel advances or subsistence money for plaintiffs while making preferential arrangements for foreign workers, by failing to vary the uniform piece rate for hardship apple-picking conditions, by discriminating against plaintiffs with regard to work assignments, living conditions and food, and by group boycotts and refusals to deal. The New York apple defendants contend that their participation in the temporary foreign labor certification program and the terms offered to domestic workers—in particular the wage rates, which plaintiffs do not contend were below the adverse effect rates set by the Department of Labor—are mandated by statute and regulations, that antitrust scrutiny would subject them to conflicting standards, and that therefore exemption from antitrust regulation must be implied.

■ The court considers first whether defendants' allegedly anticompetitive employment practices are shielded *in toto* from antitrust scrutiny by virtue of the "complex statutory structure" pursuant to which temporary foreign workers are certified for admission into the United States. Since no statutory provision expressly exempts defendants' activities from the antitrust laws, defendants bear the burden of demonstrating that immunity should be implied. The standard for the implication of antitrust

immunity, whether general or specific, is an exacting one. *Gordon v. New York Stock Exchange, Inc.*, 422 U.S. 659, 682, 95 S.Ct. 2598, 2611, 45 L.Ed.2d 463 (1975). The mere existence of regulation, even if pervasive, is insufficient to imply an exemption from antitrust laws since "[a]ctivities which come under the jurisdiction of a regulatory agency nevertheless may be subject to scrutiny under the antitrust laws." *Otter Tail Power Co. v. United States*, 410 U.S. 366, 372, 93 S.Ct. 1022, 1027, 35 L.Ed.2d 359 (1973). As the Supreme Court has emphasized: "[t]he Court has consistently refused to find that regulation gave rise to an implied exemption without first determining that exemption was necessary in order to make the regulatory Act work, 'and even then only to the minimum extent necessary.'" *Cantor v. Detroit Edison Co.*, 428 U.S. 579, 597, 96 S.Ct. 3110, 3121, 49 L.Ed.2d 1141 (1976) (footnote omitted), *quoting Silver v. New York Stock Exchange, Inc.*, 373 U.S. 341, 357, 83 S.Ct. 1246, 1257, 10 L.Ed.2d 389 (1963).

■ The relevant inquiry is whether enforcement of the antitrust laws would be repugnant to the regulatory scheme.[5] The Wagner-Peyser Act authorizes the admission of temporary foreign workers on terms not preferable to those offered domestic workers only after a shortage of domestic labor has been demonstrated. With the exception of the adverse effect rate which will be discussed below, there is nothing in the Wagner-Peyser scheme inconsistent with antitrust scrutiny; a challenge under the antitrust laws of an alleged conspiracy among agricultural employers to restrain conditions in the domestic migrant labor market would not conflict with the purpose or provisions of the Wagner-Peyser Act. Certain employment practices may violate one or the other set of laws, or both, but,

---

or how defendants have either excluded competitors or controlled the job offers of other employers. The § 2 claim must therefore be dismissed. Plaintiffs' "claim" under § 4 of the Clayton Act is also deficient since that section merely authorizes recovery of treble damages for violations of other provisions of the antitrust laws and cannot serve independently as

the basis of a claim for relief. The following discussion will explore the adequacy of plaintiffs' claim under § 1.

5. The legislative history is silent on the subject of antitrust immunity and therefore of no help to defendants.

with the exception of wage rates, there is no significant, possibly anticompetitive practice specifically sanctioned or required under the Wagner-Peyser scheme. The court therefore declines to take the extraordinary step of implying blanket antitrust immunity.

Where there is no blanket immunity, defendants may nevertheless be immune with respect to particular practices. The district court in *MCI Communications Corp. v. American Tel. & Tel. Co.*, 462 F.Supp. 1072, 1082 (N.D.Ill.1978), found that limited immunity has been implied in two situations: (1) "when the statute provides that an agency may regulate an industry under standards which are a substitute for those embodied in the antitrust laws;" and (2) "when the statute confers authority on an agency to regulate specific conduct which might be anticompetitive and the agency has, under the aegis of that authority, either required, approved or sanctioned the anticompetitive conduct at issue." The wage rates offered by the New York apple defendants fall within (2) above. Although plaintiffs assert that the wage rates offered by defendants were below market rates, plaintiffs do not allege that the wage rates were below the adverse effect rates set annually by the Secretary of Labor; it is uncontested that the New York apple de-

fendants complied with the applicable adverse effect rates.[6] Plaintiffs are therefore challenging as anticompetitive a practice which has been specifically sanctioned by the agency charged with statutory authority to regulate that practice. As stated in *Litton Systems, Inc. v. American Tel. & Tel. Co.*, 487 F.Supp. 942, 947 (S.D.N.Y.1980), exemption from antitrust scrutiny should be implied "when a regulatory agency is authorized by statute to exercise, and has in fact exercised, authority over the particular practice under attack (as contrasted with the general field of activity) in a way which effectuates the regulatory scheme." Accordingly, plaintiffs' antitrust claims must be dismissed insofar as they attack the wage rates offered by the New York apple defendants.[7]

The preceding discussion does not apply to plaintiffs' claim that the New York apple defendants violated plaintiffs' rights under the antitrust laws by conspiring to offer plaintiffs working and living conditions inferior to those offered foreign workers. Neither set of circumstances under which limited immunity must be implied is present here. *See MCI Communications, supra*, 462 F.Supp. at 1082. First, although the Secretary of Labor is charged with responsibility for regulating the temporary foreign worker certification program, the

---

6. Plaintiffs allege that the piece rates were below market rates, Compl. ¶ 93, and that the New York apple defendants' insistence upon the piece rate instead of an hourly rate rendered the adverse effect rate meaningless. Compl. ¶ 94. The regulations promulgated under the Wagner-Peyser Act, however, recognize that employers may pay workers at piece rates rather than hourly rates and specifically provide that the piece rates must be equivalent to the hourly or adverse effect rates. 20 C.F.R. § 655.202(b)(9)(ii). Plaintiffs never allege that the piece rates paid by the New York apple defendants were below the adverse effect rates; rather, plaintiffs merely allege that the piece rates were below market rates and that defendants' insistence upon piece rates rendered the adverse effect rate meaningless.

7. Although the finding of immunity disposes of the matter, the court notes an additional flaw in plaintiffs' claim with respect to wages. Plaintiffs contend that since the regulations promulgated under the Wagner-Peyser Act

merely set minima, *see Flecha v. Quiros*, 567 F.2d 1154, 1156 (1st Cir. 1977), *cert. denied*, 436 U.S. 945, 98 S.Ct. 2846, 56 L.Ed.2d 786 (1978), a conspiracy to offer domestic workers only those statutory minima may be an unlawful conspiracy in restraint of trade. The adverse effect rate, however, is intended to reflect the *market* rate for the services of similarly employed domestic workers unless the use or nonuse of foreign workers has depressed the prevailing rate. Plaintiffs therefore advance the novel claim that the New York apple defendants have restrained trade by conspiring to offer plaintiffs the market rate for their services. The adverse effect rate, moreover, is designed to reflect the prevailing rate only for the domestic labor market and to exclude the effect of the foreign labor market. By offering the statutory minimum, the New York apple defendants have therefore offered more than the actual market rate for the services of domestic and foreign migrant farm workers.

statutory concern is not that a competitive market be preserved but rather that foreign workers not be preferred over domestic workers. *Cf. Pan American World Airways, Inc. v. United States*, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963) (particular immunity implied where the Civil Aeronautics Act specifically confers upon the CAB the power to investigate and enjoin anticompetitive practices). Second, whereas the wage rates challenged by plaintiffs were specifically sanctioned by the Secretary of Labor, the allegedly discriminatory working and living conditions would violate the Wagner-Peyser Act and were in no way approved by the agency. Antitrust scrutiny of the suppression of the working and living conditions offered domestic workers would not conflict with the regulatory scheme and exemption from the antitrust laws need not be implied. Moreover, certain working and living conditions that plaintiffs assert were offered on preferential terms to foreign workers—such as working hours and type of food—are not mandated by statute or regulations. The complaint[8] therefore states a viable claim of a conspiracy to depress employment conditions in violation of § 1 of the Sherman Act. *See* II P. Areeda & D. Turner, *Antitrust Law* § 338c at 199–200 (1978). In view of the liberal pleading standard of Rule 8, Fed.R.Civ.P., and the strict standard for motions to dismiss under Rule 12(b)(6), *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), the court declines to conclude at this stage of the proceedings that plaintiffs could not establish the requisite anticompetitive purpose and effect with respect to defendants' employment practices. The New York apple defendants' motion to dismiss plaintiffs' antitrust claims for failure to state claims upon which relief can be granted is denied in part and granted in part.

**8.** The original complaint in this action has been once amended. References in this opinion to the complaint refer to the amended complaint

### B. Civil Rights Claims

Plaintiffs' fourth claim seeks relief for alleged violations by the New York apple defendants of the civil rights laws, 42 U.S.C. §§ 1981, 1983, 1985(3). The New York apple defendants' motion to dismiss challenges the sufficiency of plaintiffs' claim under each of those provisions.

#### 1. Section 1981 Claim

The New York apple defendants move to dismiss plaintiffs' claim under 42 U.S.C. § 1981 on the ground that plaintiffs allege discrimination on the basis of citizenship, not race as assertedly required by § 1981. Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens....

The Supreme Court in *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), ruled that 42 U.S.C. § 1982, the companion section to § 1981, *see Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 410 U.S. 431, 439–40 & n.11, 93 S.Ct. 1090, 1094–95 & n.11, 35 L.Ed.2d 403 (1973), "deals only with racial discrimination and does not address itself to discrimination on grounds of religion or national origin." 392 U.S. at 413, 88 S.Ct. at 2189 (footnote omitted). Since *Jones* it has been well-settled that racial animus is a necessary component of a § 1981 claim. *Campbell v. Gadsden County Dist. School Bd.*, 534 F.2d 650, 653–54 n.8 (5th Cir. 1976); *Avigliano v. Sumitomo Shoji America, Inc.*, 473 F.Supp. 506, 513–14 (S.D.N.Y.1979) *aff'd and remanded*, 638 F.2d 552 (2d Cir. 1981); *Pyles v. Keane*, 418 F.Supp. 269, 271 n.1 (S.D.N.Y.1976); *Stewart v. New York Univ.*, 430 F.Supp. 1305, 1315 (S.D.N.Y. 1976).

In the instant case, plaintiffs allege discrimination on the basis of citizenship,

(formally designated by plaintiffs as the "First Amended Complaint").

not race, and therefore do not state a claim for relief under § 1981. The complaint states that a purported class of United States migrant workers was discriminated against in favor of temporary foreign workers. Although the named plaintiffs are either Puerto Rican or black, the complaint does not assert that the basis of the alleged discrimination is defendants' preference for one racial group instead of another but rather the preference for foreign workers, who are black Jamaicans, instead of domestic workers. The plaintiff class extends to all domestic workers excluded or discouraged from the annual apple harvests, and is not limited to black or Puerto Rican domestic workers. As stated in *Jones v. United Gas Improvement Corp.*, 68 F.R.D. 1, 15 (E.D.Pa.1975):

> [T]he provisions of 42 U.S.C. § 1981 are limited in their application to discrimination, the effect of which is to deny to any person within the jurisdiction of the United States any of the rights enumerated in that section, to the extent that such rights are enjoyed by white citizens of this nation. Discrimination on other grounds, such as religion, sex, or national origin, to which white citizens may be subject, as well as white non-citizens, non-white citizens, or non-white non-citizens, is not proscribed by the statute.

Plaintiffs' claim that foreign workers are preferred over domestic workers could be asserted as well by domestic white workers. The basis of the claim is citizenship, not racial animus, and accordingly the motion of the New York apple defendants to dismiss plaintiffs' § 1981 claim is granted.[9]

---

**9.** Plaintiffs' brief in opposition to defendants' motion to dismiss sets forth two arguments against dismissal. First, plaintiffs argue that there is a § 1981 cause of action for discrimination against citizens. The cases cited by plaintiffs, however, *see, e.g., Takahashi v. Fish & Game Comm.*, 334 U.S. 410, 419–20, 68 S.Ct. 1138, 1142–43, 92 L.Ed. 1478 (1948); *Guerra v. Manchester Terminal Corp.*, 498 F.2d 641, 653–54 (5th Cir. 1974); *Spiess v. C. Itoh & Co. (America)*, 408 F.Supp. 916 (S.D.Tex.1976), establish merely that aliens are protected by discrimination unlawful under § 1981 and not that

## 2. *Section 1983 Claim*

The New York apple defendants move to dismiss plaintiffs' claim under 42 U.S.C. § 1983 on the ground that defendants' alleged conspiracy was private in character and not under color of state law as required by § 1983. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation ... of any State or Territory, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured...." It is well-settled that to state a claim for relief under § 1983, plaintiffs must allege that the persons who allegedly deprived them of a federal right acted under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1924, 64 L.Ed.2d 572 (1980). The color of state law requirement will not be satisfied by claims against private defendants such as the New York apple defendants absent allegations that they conspired with state officials. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970).

■ In the instant case, plaintiffs assert that the New York apple defendants conspired to deprive plaintiffs of their civil rights by, *inter alia*, submitting discriminatory job offers through the state offices of the Wagner-Peyser system. Plaintiffs further allege that defendant officials of the United States Department of Labor and the New York State Department of Labor failed to fulfill their statutory duties and violated plaintiffs' civil rights by, *inter alia*, accepting and processing discriminatory job offers. Nowhere, however, does the com-

---

§ 1981 permits a cause of action for discrimination on the basis of alienage. Second, plaintiffs assert that they are Puerto Ricans and blacks and therefore may maintain an action under § 1981. As stated in the text, however, the basis of the discrimination alleged in the complaint is citizenship, not race, and the plaintiff class is not limited to Puerto Ricans and blacks. Moreover, where the allegedly preferred group is black Jamaicans, assertions of racial discrimination against a class of Puerto Rican and black domestic workers are suspect.

plaint assert that federal or state officials conspired with the New York apple defendants. The complaint merely states in an introductory paragraph that "[t]he aforesaid conspiracy [among the New York apple defendants and their agents] has been aided, contrary to law, by officials of the United States Department of Labor, the United States Immigration and Naturalization Service, and the New York, Florida, and Puerto Rico Departments of Labor." The complaint, which is forty pages in length, substantiates that introductory paragraph by alleging numerous statutory violations by state and federal officials acting independently of the private defendants, but clearly fails to allege concerted activity between those officials and the private defendants. Accordingly, in the absence of allegations that the private defendants acted in complicity with the state and federal defendants, the motion of the New York apple defendants to dismiss plaintiffs' § 1983 claim is granted. *See Buck v. Board of Elections of City of New York*, 536 F.2d 522, 524 (2d Cir. 1976); *Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir. 1975); *Archer Gardens, Ltd. v. Brooklyn Ctr. Dev. Corp.*, 468 F.Supp. 609, 613 (S.D.N.Y.1979); *Sanabria v. Village of Monticello*, 424 F.Supp. 402, 411 (S.D.N.Y.1976); *Harris v. Ward*, 418 F.Supp. 660, 661–62 (S.D.N.Y.1976).

### 3. *Section 1985 Claim*

The New York apple defendants also move to dismiss plaintiffs' claim under 42 U.S.C. § 1985(3) which makes it illegal for two or more persons to conspire to deprive any person of the equal protection of the laws. Defendants contend that plaintiffs have failed to satisfy two of the requirements for a cause of action under § 1985(3). First, the Supreme Court ruled in *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), that to be actionable under § 1985(3) a conspiracy must be motivated by "some racial, or perhaps otherwise classbased, invidiously discriminatory animus...." Second, as the Supreme Court stated in *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60

L.Ed.2d 957 (1979): "Section 1985(c) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." Defendants dispute that plaintiffs have alleged either the requisite class animus or the violation of a right protected by § 1985. The court observes at the outset that "[t]he question of the scope of § 1985(3) is the subject of a considerable controversy among the circuits." *Regan v. Sullivan*, 557 F.2d 300, 308 n.9 (2d Cir. 1977).

In support of their motion, defendants rely principally on *Lopez v. Arrowhead Ranches*, 523 F.2d 924 (9th Cir. 1975), wherein the Ninth Circuit dismissed a claim under § 1985(3) that United States citizen and legal alien farm workers were being discriminated against in favor of illegal alien workers. The court in *Lopez* distinguished and dismissed two claims of discriminatory deprivation: first, that plaintiffs were unable to secure employment because of the disparate treatment of illegal aliens; and second, that plaintiffs' working conditions were indirectly harmed as a result of defendants' use of illegal aliens. The Ninth Circuit dismissed plaintiffs' claim for discrimination in hiring as follows:

> To put the matter simply, plaintiffs have no legal right or entitlement either to be hired by the private employers, or to be free of discrimination on the basis of alienage when seeking private employment. The sole potential source of such a legal right of which we are aware, Title VII's proscription of private employment discrimination on the basis of national origin, 42 U.S.C. § 2000e–2(a)(1), has been held not to bar discrimination on the basis of alienage. *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973).

523 F.2d at 927. As to plaintiffs' claim regarding their working conditions, the Ninth Circuit conceded that plaintiffs had a legal entitlement under various statutes and regulations such as the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(H)(ii) and 20 C.F.R. § 602.10,

but nevertheless dismissed the claim on the ground that "the alleged animus against legal workers is contradicted by plaintiffs' own allegations that defendants deprive both legal and illegal farm workers of statutory protections...." 523 F.2d at 928.

■ The New York apple defendants' contention that the alleged preferential treatment of foreign workers at the expense of domestic workers lacks the necessary class-based animus must be rejected. First, the Supreme Court in *Griffin* did not limit § 1985(3) claims to those based on alleged racial discrimination, and the court finds no reason to reject plaintiffs' claim of discrimination against domestic migrant workers as insufficiently invidious or class-based. *See Weise v. Syracuse Univ.*, 522 F.2d 397 (2d Cir. 1975) (§ 1985 applies to alleged gender discrimination against female University faculty members); *Weiss v. Willow Tree Civic Ass'n*, 467 F.Supp. 803, 812 & n.25 (S.D.N.Y.1979) (§ 1985 applies to alleged discrimination against Hasidic sect); *cf. Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 720 (9th Cir. 1981) (bias against sheriffs not the kind of bias prohibited by § 1985). Second, although the requirement that there be no inconsistency between the alleged class animus and the alleged deprivation of rights would exclude plaintiffs' claim that the wage rates violated § 1985(3) since the wages were admittedly offered uniformly to both domestic and foreign workers, that requirement is satisfied by plaintiffs' allegations that various working and living conditions were offered preferentially to foreign workers. Thus, the court rules that plaintiffs' assertion that the New York apple defendants discriminated with respect to working and living conditions against the class of domestic migrant workers either employed or seeking employment in the annual New York apple harvests satisfies *Griffin's* mandate that to be actionable under § 1985(3) a conspiracy be motivated by a class-based, invidiously discriminatory animus.

■ The court next considers whether plaintiffs have asserted the violation of a right protected under the Constitution or federal law. As Justice Powell stated in his concurring opinion in *Novotny*, and as apparently recognized by the Ninth Circuit in *Lopez*, the Supreme Court "has never held that the right to any particular private employment is a 'right of national citizenship,' or derives from any other right created by the Constitution." 442 U.S. at 380. Nevertheless, plaintiffs' claim in the instant case is sufficient under § 1985(3) in that plaintiffs allege violations of rights established by regulations promulgated under the Wagner-Peyser Act to non-discriminatory treatment vis-a-vis temporary foreign workers. *See* 20 C.F.R. §§ 655.202(a), (b), 655.203(b), (c), (e), 655.206(a)(2), (b)(1). The court holds that § 1985(3) applies to the alleged conspiracy among the New York apple defendants and their agents to deprive domestic migrant workers employed during the apple harvest of the above-enumerated rights. The New York apple defendants' motion to dismiss plaintiffs' claim under § 1985 is accordingly denied.

### C. *More Definite Statement*

The New York apple defendants move in the alternative for a more definite statement. As the foregoing discussion makes clear, plaintiffs' surviving claims against the New York apple defendants under the antitrust laws and 42 U.S.C. § 1985(3) adequately state claims for relief under those laws. Accordingly, the motion for a more definite statement is denied.

### D. *Res Judicata*

Defendants aver that a number of plaintiffs previously filed actions based on the same facts alleged in this action and that the claims of those plaintiffs are barred under the doctrine of res judicata. The argument is largely technical in an action such as this where numerous plaintiffs advance several claims against numerous defendants inasmuch as a finding that the doctrine of res judicata bars some of the claims of some plaintiffs against certain defendants would not result in the dismissal from this action of any party or any claim in its entirety. Moreover, since plaintiffs primarily seek injunctive and declaratory

relief, dismissal of certain claims of certain plaintiffs against certain defendants would have negligible practical effect. Nevertheless, the court now considers the res judicata effect of those prior actions.

In August 1978, three actions brought by nine plaintiffs [10] against some of the New York apple defendants [11] based on their treatment in the 1975 apple harvest were settled and dismissed pursuant to a consent order and stipulation of settlement. *See Jenkins v. S & A Chaissan & Sons, Inc.*, 77 Civ. 816 (S.D.N.Y.); *McDonald v. Nardone*, 77 Civ. 817 (S.D.N.Y.); *Luellen v. Stanley Orchards, Inc.*, 77 Civ. 818 (S.D.N.Y.). Those actions present no res judicata problem since the complaint in this action expressly states that those plaintiffs, who are pursuing solely individual claims, "having settled their claims against their respective growers and cooperatives in a previous action, claim here solely against defendant federal and state officials." Compl. ¶ 44.

■ In April 1979, seventeen plaintiffs [12] obtained a default judgment against New York apple defendant Altamont Farms, Inc. in an action brought in the Superior Court of Puerto Rico based on their experiences in the 1978 New York apple harvest. *Rios v. Altamont Farms, Inc.*, No. 78–6106 (Super.Ct.P.R.). Similarly, in June 1979 plaintiff Luis Alberto Rivera obtained a default judgment against New York apple defendant Merritt Hart in the Superior Court of Puerto Rico based on Rivera's treatment during the 1978 New York apple harvest. *Rivera v. Hart*, No. CS–79–482 (Super.Ct.P.R.). Those prior actions bar those plaintiffs' claim under the civil rights laws against their respective employers but not their causes of action for injunctive relief and treble damages under

the antitrust laws for which the Puerto Rico state court lacked jurisdiction. *See International Railways of Central America v. United Fruit Co.*, 373 F.2d 408, 417–19 (2d Cir.), *cert. denied*, 387 U.S. 921, 87 S.Ct. 2031, 18 L.Ed.2d 975 (1967); Restatement, Judgments § 62, Comment on Clause (a).

#### E. Statute of Limitations

The New York apple defendants also move to dismiss certain claims on the ground that they are barred by the statute of limitations.

The original complaint was filed on October 22, 1979. The four year statute of limitations applicable to plaintiffs' antitrust claim against the New York apple defendants would therefore preclude recovery for damages suffered during the 1975 apple harvest season, or that portion of the harvest that preceded October 22, 1975. 15 U.S.C. § 15b.

■ As to plaintiffs' civil rights claim, the applicable limitation period is the three year period provided by New York Civ. Prac.Law and Rules § 214(2). *Taylor v. Mayone*, 626 F.2d 247, 250–51 & n.4 (2d Cir. 1980); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 449 (2d Cir. 1980); *Meyer v. Frank*, 550 F.2d 726, 728 n.5 (2d Cir.), *cert. denied*, 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 90 (1977). The three year statute of limitations precludes recovery on plaintiffs' civil rights claim for the entire 1975 apple harvest and for that portion of the 1976 season that preceded October 22, 1976.

#### F. Farm Labor Executive Committee

The Farm Labor Executive Committee ("FLEC"), an unincorporated committee

---

**10.** The nine plaintiffs are Marvin Jenkins, Leroy Johnson, Walter Myles, Theodore Young, James Luellen, John McDonald, Lovette Belcher, Clarence Calloway, and Angin McNatt.

**11.** Defendants in those actions included New York apple defendants S & A Chaissan & Sons, Inc., Valley Growers Co-op, Inc., Ashton Hart, Michael Nardone, Mid-Hudson Growers Co-op, Inc., Charles Andola and Stanley Orchards, Inc.

**12.** The 17 plaintiffs are Juan Valderrama Rios, Pablo Cepeda Quinones, Juan Nunez Aquino, Roberto Santiago Gomez, Federico Albert Colon, Felix Davila Fuentes, Ricardo Navarro Rivera, Silvia Esther Resto Jaime, Angel Luis Gracia Resto, Daniel Figueroa Ramos, Jose Daniel Figueroa Sandoval, Monserrate Rivera, Edwin Amezquita Rivera, Justo Medina Velez, Gilberto Medina Miranda, Jesusa Vazquez and Armando Robles Vazques.

composed of apple grower organizations in various eastern states and sued herein as one of the New York apple defendants, moves to dismiss for lack of *in personam* jurisdiction. Plaintiffs assert that jurisdiction is provided for by New York Civ. Prac.Law and Rules ("CPLR") § 302(a)(1) which permits jurisdiction over a non-resident defendant who transacted business within the state if the cause of action arose out of that transaction.

According to the uncontroverted affidavit of FLEC's chairman, FLEC maintains no offices and has no employees and all of its meetings have been held in Washington, D.C. Virtually all of FLEC's expenses, which are shared among its members, are for legal fees for the attorneys who advise FLEC of legal developments in connection with the temporary foreign labor certification program and who participate in various administrative and judicial proceedings. The affidavit asserts that neither FLEC nor any agent has ever transacted any business in New York in connection with the events detailed in the complaint.

In opposition to FLEC's motion, plaintiffs offer several documents indicating that FLEC's agents and representatives appeared in New York to conduct a series of negotiations on behalf of the apple growers with regard to the terms and conditions of employment for Puerto Rican workers in the 1975 New York apple harvest. The difficulty with plaintiffs' position is that all of FLEC's documented activities occurred in 1975 in advance of and in preparation for the 1975 harvest season and beyond the limitation period. Plaintiffs' causes of action do not therefore arise out of FLEC's documented transactions in New York. Plaintiffs argue that there is no evidence that FLEC's activities changed after 1975, but plaintiffs cannot meet their burden of proving a basis for personal jurisdiction by means of speculation. *See Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 92 (2d Cir. 1975). Accordingly, FLEC's mo-

tion to dismiss for lack of *in personam* jurisdiction is granted.

## II. *Florida Sugar Defendants*

The Florida sugar defendants, sued principally as agents of the New York apple defendants, are the Florida Fruit and Vegetable Association (the "FFVA"), a non-profit Florida corporation which represents many Florida fruit and vegetable growers, George Sorn, manager of the FFVA's labor division, the Florida Sugar Producers Association (the "FSPA"), which represents several Florida sugar cane growers in the recruitment of cane cutters, and Earl Morrison, authorized representative of the FSPA. Plaintiffs claim that the Florida sugar defendants conspired with the New York apple defendants to displace plaintiffs from the New York apple harvest in violation of plaintiffs' rights under the antitrust and civil rights laws. The central allegations pertaining to the Florida sugar defendants concern their role as multi-employer bargaining agents for all United States employers of temporary foreign labor in annual negotiations with the British West Indies Central Labour Organization ("BWICLO") regarding the terms and conditions of the employment of thousands of Jamaican workers in the New York apple harvest and elsewhere. Plaintiffs also allege that they have been adversely affected in their working conditions by the discriminatory practices of the Florida sugar defendants during their recruitment and selection of temporary foreign workers for the annual sugar cane harvest.[13]

The complex process of recruiting temporary foreign workers from the West Indies to fill deficiencies in the domestic labor market of sugar cane cutters and apple pickers is conducted as follows. The Florida sugar cane industry employs annually approximately 8,500 West Indian workers during a harvest season of four to five months. BWICLO permits the Florida sugar defendants to predesignate approximate-

---

**13.** Annually during the years in question, at least 1,000 Jamaican workers recruited by the Florida sugar defendants worked in the New York apple harvest under the standard employment contracts negotiated in part by the Florida sugar defendants. *See* note 14 *infra.*

ly 4,000 to 4,500 workers known to employers from previous harvest seasons. The remaining 4,000 workers are chosen by the ministries of Jamaica and the other West Indian islands from a pool of 8,000 prospective cane cutters previously screened by the Florida sugar defendants. Those 8,000 workers are selected by the Florida sugar defendants from a group of 15,000 cane cutter applicants made available by the West Indian governments for inspection by the Florida sugar defendants' teams. The workers are selected on the basis of their physical condition and prior work record and, according to plaintiffs, on the basis of their age, sex and willingness to accept inferior conditions.

East Coast apple growers use approximately 5,000 to 6,000 temporary foreign workers to supplement the force of domestic workers. Most of the temporary foreign workers are predesignated on the basis of their work during previous apple harvests. In addition, the apple growers require approximately 1,000 new foreign workers annually.[14] The apple growers do not select those 1,000 workers by screening a pool of prospective apple pickers made available for their inspection in the West Indies; rather, the apple growers annually conclude agreements with BWICLO and the Jamaican Ministry of Labour which permit the Jamaican Ministry to select 1,000 workers from the pool of 8,000 workers already preselected by the Florida sugar defendants. The Florida sugar defendants contend that they have no control over or knowledge of which Jamaicans are employed by the New York apple defendants; it is uncontroverted that the Florida defendants are not parties to the agreements between the Jamaican ministry and the apple growers. Plaintiffs claim that the temporary foreign work forces in the sugar cane and apple industries are interlocking, that the Florida sugar defendants recruit Jamaicans for both industries simultaneously and that the New York apple defendants permit and conduct recruitment of their temporary foreign workers for the succeeding sugar cane harvest season.

In addition to the recruitment process, each year the Florida sugar defendants participate in annual negotiations with the Caribbean Regional Labour Board regarding the terms and conditions of the employment of West Indian workers in seasonal agricultural work in the United States. On matters common to all agricultural employers, Florida sugar defendant George Sorn acts as spokesman for all employers. The negotiations are akin to multi-employer contract bargaining with a labor union in the United States. Among the terms and conditions negotiated are the choice of air and ground carriers, AWOL and worker breach of contract provisions, travel advance loans from Jamaican banks, recruitment and preselection facilities and procedures, termination of workers, performance standards, educational programs, worker housing, employee benefits, and the degree of participation of BWICLO representatives. Plaintiffs claim that the negotiations are conducted by the Florida sugar defendants pursuant to their conspiracy with the New York apple defendants to discourage and displace plaintiffs from employment in the New York apple harvest.[15] The Florida sugar defendants argue that they are in no way whatsoever agents of the New York apple defendants and that they have no interest in, control over, or knowledge of the apple growers' disputed employment practices.

The Florida sugar defendants move to dismiss plaintiffs' claims pursuant to Rule

---

14. Plaintiffs claim that there are 2,000 Jamaican workers employed in the annual New York apple harvest labor force. The numbers set forth in the text are taken from the affidavits of Florida sugar defendants Sorn and Morrison. The court makes no finding at this stage of the proceedings whether 1,000 or 2,000 Jamaicans were annually employed in the New York apple harvest during the years in question.

15. Plaintiffs simultaneously allege that foreign workers have been afforded preferential treatment during the apple harvests, Compl. ¶¶ 100, 101, 104, and that plaintiffs have been adversely affected by the oppressive conditions imposed upon those foreign workers certified for employment. Compl. ¶¶ 105, 121, 122.

12(b)(6), Fed.R.Civ.P., on the ground that plaintiffs have failed to state claims under the antitrust and civil rights laws and in the alternative for summary judgment on those claims pursuant to Rule 56, Fed.R. Civ.P. The Florida sugar defendants also move to dismiss pursuant to Rules 12(b)(2) and (3) for lack of *in personam* jurisdiction and for improper venue.

## A. *Personal Jurisdiction*

▇ Where the grounds of a motion to dismiss include lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted, the court must consider the jurisdictional and venue issues first. *Arrowsmith v. United Press Intern.*, 320 F.2d 219, 221 (2d Cir. 1963).

▇ The only reasonable basis of personal jurisdiction over the Florida sugar defendants under the New York longarm statute is CPLR § 302(a)(3)(ii) which permits jurisdiction where (1) the defendant has committed a tortious act [16] outside New York (2) causing injury within the state (3) if the defendant should reasonably expect the act to have consequences within the state and (4) if the defendant derives substantial revenue from interstate or international commerce.[17] Although plaintiffs bear the burden of proving jurisdiction, the pleadings and affidavits are to be considered in the light most favorable to plaintiffs. *Sterling Television Presentations, Inc. v. Shintron Co.*, 454 F.Supp. 183, 186 (S.D.N.Y.1978); *Freeman v. Gordon & Breach, Science Publishers, Inc.*, 398 F.Supp. 519, 520 (S.D.N.Y.1975). The applicable standard is whether facts "may exist" to satisfy the four requirements of CPLR § 302(a)(3)(ii). *Fantis Foods, Inc. v. Stan-*

*dard Importing*, 49 N.Y.2d 317, 326, 425 N.Y.S.2d 783, 786, 402 N.E.2d 122 (1980). Those requirements will be addressed *seriatim*.

▇ First, should the Florida sugar defendants be held liable to plaintiffs, liability would indisputably be based on the tortious acts of the Florida sugar defendants committed in Jamaica during the annual recruitment of Jamaican workers and negotiation of the standard employment contract for temporary foreign agricultural workers. Second, it is not disputed that any injuries suffered by plaintiffs in connection with this lawsuit were suffered in New York. Third, the court finds that the Florida sugar defendants should reasonably have foreseen that the standard contract negotiated in part by them would have consequences at the place of employment of those workers whose employment conditions were thereby determined. It is not disputed that the Florida sugar defendants were aware that the standard contract would apply to temporary foreign workers in the New York apple harvest. At this stage of the proceedings, the record is very undeveloped regarding the Florida sugar defendants' alleged conspiracy with the New York apple defendants and their consequent role in the Jamaican negotiations and recruitment. Nevertheless, the pleadings and affidavits establish to this court's satisfaction that facts "may exist" to demonstrate that the Florida sugar defendants should reasonably have foreseen that their conduct in Jamaica would have consequences in New York. *See Allen v. Auto Specialties Mfg. Co.*, 45 App.Div.2d 331, 357 N.Y.S.2d 547 (3d Dep't 1974). Fourth, the Florida sugar defendants' importation of thousands of West In-

---

**16.** Where antitrust and constitutional violations are alleged, defendants' acts are properly analyzed as tortious acts for the purpose of assessing personal jurisdiction. *Clark v. United States*, 481 F.Supp. 1086, 1097 n.12 (S.D.N.Y.1979), *appeal dismissed*, 624 F.2d 3 (2d Cir. 1980) (constitutional claims); *McCrory Corp. v. Cloth World, Inc.*, 378 F.Supp. 322, 324–25 (S.D.N.Y.1974) (antitrust claims).

**17.** The Florida sugar defendants cannot be sued in New York under a co-conspirator theory as

agents or principals of the New York apple defendants who committed alleged tortious acts within the state. Although plaintiffs' allegations of conspiracy may be sufficient to withstand a motion to dismiss for failure to state a claim for relief, the allegations alone are insufficient to establish a conspiracy for jurisdictional purposes. *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93–94 (2d Cir. 1975); *Clark v. United States, supra*, 481 F.Supp. at 1096–97.

dian workers from the Caribbean into Florida satisfies § 302(a)(3)(ii)'s requirement that defendants derive substantial income from interstate or international commerce. The fact that the ultimate transaction for which the Florida sugar defendants are paid—namely, delivery of the workers to Florida sugar cane growers—occurs in Florida is irrelevant. The longarm statute's concern is that small, local companies who could not anticipate litigation in foreign forums not be exposed to suit in foreign forums. *Markham v. Gray*, 393 F.Supp. 163, 166 (W.D.N.Y.1975). The Florida sugar defendants' substantial international activities satisfy that concern.[18]

Since the requirements of CPLR § 302(a)(3)(ii) regarding tortious acts outside the state are met, the Florida sugar defendants' motion to dismiss for lack of *in personam* jurisdiction is denied.

### B. *Venue*

▮ In a non-diversity case such as this, venue is proper in the judicial district in which the claim arose. 28 U.S.C. § 1391(b).[19] In determining where the claim arose, the applicable standard is the "weight of [defendants'] contacts" with the various judicial districts. *Honda Associates, Inc. v. Nozawa Trading Co.*, 374 F.Supp. 886, 891 (S.D.N.Y.1974). Since the record is not yet developed as to where the alleged conspiracy arose, the court must look to other factors, such as the place where the probable consequences of defendants' acts would be. *Iranian Shipping Lines, S.A. v. Moraites*, 377 F.Supp. 644, 648 (S.D.N.Y.1974). Although the Florida sugar defendants' alleged actions relevant to this lawsuit occurred in Jamaica, Florida and New York, the principal and foreseeable consequences of that allegedly unlawful

conduct were in New York, in the Southern District and elsewhere, where plaintiffs were employed during the years in question. The court finds that the venue requirements of § 1391(b) are satisfied and the Florida sugar defendants' motion to dismiss for improper venue is accordingly denied.

### C. *Motion to Dismiss*

The Florida sugar defendants move to dismiss plaintiffs' antitrust and civil rights claims for failure to state claims for relief, advancing arguments substantially similar to those advanced by the New York apple defendants in their motion to dismiss. The Florida sugar defendants argue that exemption from the antitrust laws must be implied due to the conflict between plaintiffs' claims and the regulatory scheme, that plaintiffs' claims under 42 U.S.C. §§ 1981 and 1985 are insufficient due to plaintiffs' failure to allege the requisite class or racial animus, and that plaintiffs' claim under 42 U.S.C. § 1983 lacks the necessary element of action under color of state law. For the reasons stated above with respect to the New York apple defendants, *see* pp. 9 to 21 *supra*, the court grants in part and denies in part the Florida sugar defendants' motion to dismiss plaintiffs' claim under the antitrust laws, denies the motion to dismiss plaintiffs' claim under section 1985, and grants the motion to dismiss plaintiffs' claims under sections 1981 and 1983.

### D. *Summary Judgment*

The court next turns to the Florida sugar defendants' motion for summary judgment on plaintiffs' remaining claims against them under the antitrust laws and § 1985 of the civil rights laws.

---

**18.** In light of the court's findings that New York consequences were foreseeable and that the Florida sugar defendants derived substantial revenue from international commerce, the court is also satisfied that the exercise of jurisdiction will not offend "'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61

S.Ct. 339, 342, 85 L.Ed. 278 (1940); *see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

**19.** Section 1391(b) applies to antitrust actions, *Iranian Shipping Lines, S.A. v. Moraites*, 377 F.Supp. 644, 647 (S.D.N.Y.1974) (Gurfein, D.J.), as well as to civil rights actions. *Jimenez v. Pierce*, 315 F.Supp. 365, 365–66 (S.D.N.Y.1970).

The court construes plaintiffs' claims against the Florida sugar defendants as follows. Plaintiffs assert that they have been adversely affected in their employment opportunities and conditions by the conspiracy among the New York apple defendants and Florida sugar defendants whereby, *inter alia*, the Florida sugar defendants (1) negotiated restrictive terms for the standard contract for the Jamaican workers who would work in the sugar cane and apple harvests and (2) excluded during their recruitment of Jamaican workers those applicants who were either female, underage, overage, or "black-listed" by having objected in prior years to poor working conditions.[20]

The Florida sugar defendants seek summary judgment on the basis of two affidavits which assert that the Florida sugar defendants did not at any time represent apple growers or any other employers, that they recruited workers only for the sugar cane harvest, that they had no control over which domestic workers or Jamaicans were hired or not hired by other employers, and that they had no control over the terms and conditions of employment adopted by the New York apple defendants. Those assertions are not substantially controverted by affidavits submitted by plaintiffs. Nevertheless, against defendants' affidavits must be set the uncontested fact that Florida sugar defendant Sorn functions as spokesman for all United States employers on a wide range of matters common to those employers at the annual contract negotiations with BWICLO. Furthermore, plaintiffs have submitted affidavits indicating that Jamaican workers are recruited by the Florida sugar defendants for both the sugar cane and apple harvests.

The court cannot find as a matter of law that the Florida sugar defendants are entitled to summary judgment on plaintiffs' claims under the antitrust and civil rights laws. The fact that the Florida sugar defendants were not parties to the agreements between BWICLO and the New York apple defendants whereby Jamaican workers screened by the Florida sugar defendants were designated for employment in the apple harvest does not negate the possibility that plaintiffs may prove a conspiracy among the New York apple defendants and the Florida sugar defendants to negotiate restrictive employment terms for docile Jamaican workers ultimately to the detriment of domestic migrant farm workers. There are genuine issues of fact regarding Florida sugar defendant Sorn's role as spokesman, agent or co-conspirator on behalf of the New York apple defendants during his negotiation of contract terms for those Jamaican workers to be employed in the New York apple harvest and elsewhere, and on this motion by defendants for summary judgment the court is required to draw all permissible inferences in plaintiffs' favor. *Hill v. A–T–O, Inc.*, 535 F.2d 1349, 1354 (2d Cir. 1976). The court is also mindful of the general rule that summary judgment is seldom appropriate in antitrust cases where proof is usually in the hands of the conspirators. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *see Dominicus Americana Bohio v. Gulf & Western Inds., Inc.*, 473 F.Supp. 680, 693 (S.D.N.Y.1979). Accordingly, the Florida sugar defendants' motion for summary judgment is denied.

## III. *Meranda*

Defendant William H. Meranda, sole proprietor of the Meranda Company, is sued as an agent and co-conspirator of the New York apple defendants. The complaint alleges that Meranda, whose business is chartering air transportation, (1) participates in Jamaica in the selection of workers and in the negotiation of the standard employment contract, (2) transports temporary foreign workers from Jamaica to points in the United States for the benefit of, *inter alia*, the New York apple defendants and the Florida sugar defendants, and (3) transports temporary foreign workers from Florida to New York and then back to Florida. Plaintiffs have also submitted a document

---

**20.** *See* note 15 *supra*.

indicating that Meranda has signed some employment contracts as the agent of the New York apple defendants. These allegations are not specifically denied by the affidavit submitted by Meranda. Meranda moves to dismiss pursuant to Rules 12(b)(2), (3) and (6), Fed.R.Civ.P., for lack of *in personam* jurisdiction, improper venue, and failure to state a claim upon which relief may be granted.

### A. *Personal Jurisdiction*

■ The court considers first the question of personal jurisdiction. *See Arrowsmith v. United States Press Intern., supra,* 320 F.2d at 221. Plaintiffs premise jurisdiction on CPLR § 302(a)(1) which permits jurisdiction where the cause of action arises out of defendant's transaction of business within the state. That section is not applicable to Meranda. The only act or series of acts which Meranda allegedly committed in New York was the transport of temporary foreign workers into and out of the state. As this court construes the complaint, the mere transport of those workers does not and cannot serve as the basis of plaintiffs' claims against Meranda. Rather, any actionable role Meranda may have played in the alleged conspiracy would have arisen out of Meranda's participation in the recruitment of Jamaican workers and the negotiation of their employment contracts. Since plaintiffs' claims do not arise out Meranda's transactions in New York, jurisdiction may not be predicated on CPLR § 302(a)(1).

A more plausible basis of jurisdiction is CPLR § 302(a)(3)(ii) which permits jurisdiction over a defendant (1) who commits tortious acts outside New York (2) causing injury in New York (3) if consequences within the state were foreseeable and (4) if the defendant derives substantial revenue from interstate or international commerce.[21] These four requirements are satisfied as to Meranda. First, as stated above, Meranda's tortious acts, if any, were committed outside New York, during his alleged participation in Jamaica in the recruiting and negotiations. Second, plaintiffs' injuries, if any, were indisputably suffered at their places of employment in New York. Third, Meranda knew he was recruiting and negotiating employment terms for workers for both the sugar cane and apple harvests. It is not disputed that Meranda transported workers to New York. Moreover, Meranda apparently signed employment contracts as agent for some New York apple growers. Therefore, Meranda could reasonably have foreseen that his conduct in relation to the employment and employment conditions of the Jamaicans destined to work in the New York apple harvest would have consequences in New York. Fourth, although the record is undeveloped on this point, as a charterer for air transportation, Meranda presumably derives the bulk of his revenue from interstate and/or international commerce.

Accordingly, Meranda's motion to dismiss for lack of *in personam* jurisdiction is denied.

### B. *Venue*

This court's prior discussion of venue in relation to the Florida sugar defendants, *see* p. 368 *supra*, is equally applicable to Meranda's motion to discuss for improper venue. There is an adequate nexus in this district among the New York apple defendant's employment practices, plaintiffs' alleged injuries, and the foreseeable consequences of Meranda's alleged conspiratorial activity in Jamaica, Florida and New York. Since the "weight of contacts" is in the Southern District, Meranda's motion to dismiss for improper venue is denied.

### C. *Motion to Dismiss*

Meranda moves to dismiss plaintiffs' antitrust claims on the ground that immunity from the antitrust laws should be implied due to the complex regulatory scheme pertaining to the temporary foreign worker certification program. The identical argument was considered, accepted in part and rejected in part in this court's discussion of the New York apple defendants' motion to

---

21. *See* notes 16–18 & accompanying text *supra*.

dismiss. *See* pp. 357 to 363 *supra*. Meranda's motion to dismiss plaintiffs' antitrust claims for failure to state claims for relief is accordingly granted to the same extent as was the New York apple defendants' motion.

## IV. *BWICLO and Edwards*

Plaintiffs claim that the British West Indies Central Labour Organization ("BWICLO") and Harold F. Edwards, BWICLO's Chief Liaison Officer in the United States, joined in the New York apple defendants' conspiracy to deprive plaintiffs of employment opportunities in the New York apple harvest in violation of plaintiffs' rights under the antitrust and civil rights laws. BWICLO, an unincorporated association, is an administrative arm of the Caribbean Regional Labour Board. As the representative of British West Indian governments, BWICLO is charged with responsibility for arranging and monitoring the employment of British West Indian workers in the United States. BWICLO participates in the recruitment of West Indian workers for employment in the United States, annually negotiates the standard employment contract for those workers, and sends representatives into the United States to monitor the employment conditions of West Indian workers in the New York apple harvest and elsewhere. As BWICLO's Chief Liaison Officer in the United States, defendant Edwards has acted as agent for the Governments of Antigua, Barbados, British Honduras, Dominica, Granada, Guyana, Jamaica, Montserrat, St. Kitts, St. Lucia, and St. Vincent, and has signed employment contracts on behalf of the Government of Jamaica. BWICLO is a not-for-profit association funded out of the treasuries of its member nations. Plaintiffs allege that BWICLO also recoups part of the administrative expenses incurred in connection with the temporary foreign worker certification program by extracting 3% of the workers' gross pay. BWICLO and Edwards move to dismiss plaintiffs' claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., on the grounds that they are immune from the jurisdiction of this court under the Foreign Sovereign Immunity Act, 28 U.S.C. § 1602 *et seq.* (the "FSIA"), that they are not "persons" who may be held liable under the antitrust and civil rights laws, and that plaintiffs' claims are barred by the act of state doctrine. The two defendants also argue that plaintiffs' antitrust and civil rights claims fail for reasons identical to those advanced by the other defendants. The court turns first to the question of foreign sovereign immunity.

■ The FSIA codified the "restrictive" theory of immunity; under that theory, foreign states are granted immunity from the jurisdiction of courts of this nation with respect to their public or governmental acts but not with respect to their commercial acts. As a threshold matter, the court finds that BWICLO, an unincorporated association and administrative arm of the Caribbean Regional Labour Board, is an "organ" of its member states within the meaning of 28 U.S.C. § 1603(b)(2) and as such is an "instrumentality" of those foreign states and included within the FSIA's definition of foreign states. 28 U.S.C. § 1603. Additionally, insofar as Edwards is sued in his official capacity as agent of the instrumentality, he is equally protected by principles of foreign sovereign immunity.

■ The principal question is whether BWICLO's conduct in connection with this lawsuit constitutes "commercial activity" which satisfies the requirements of the commercial act exception of the FSIA. 28 U.S.C. § 1605(a)(2). That question is not easily answered. *See Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 308–10 (2d Cir. 1981). The statute requires that the character of an activity "be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d). The legislative history suggests that commercial acts are "those which private persons normally perform." H.R.Rep. No.94–1487, 94th Cong., 2d Sess. 14, *reprinted in* [1976] U.S. Code Cong. & Ad. News 6613. Applying these elusive formulae, the court concludes that BWICLO engaged in non-commercial acts in connection with this lawsuit. Participation without remuneration, as neither employer nor employee, in

annual negotiations of the terms and conditions of employment of thousands of workers is not an activity ordinarily performed by private persons. *Cf. Texas Trading, supra,* 647 F.2d at 319 (Government of Nigeria engaged in commercial activity when it entered into cement purchase contracts and appurtenant letters of credit). BWICLO is a not-for-profit association, and its alleged receipt of 3% of the temporary foreign workers' gross pay in order to defray administrative expenses is not the equivalent of receipt of fees in exchange for services. *Cf. Yessenin-Volpin v. Novosti Press Agency,* 443 F.Supp. 849, 855–56 (S.D.N.Y.1978) (where Soviet instrumentality received fees for services rendered to United States impressario seeking to promote tour of Russian performers, Soviet agency was engaged in commercial activity). Moreover, as the district court ruled in *International Ass'n of Machinists v. Organization of Petroleum Exporting Countries ("OPEC"),* 477 F.Supp. 553, 568 (C.D.Calif.1979), *aff'd on other grounds,* 649 F.Supp. 1354 (9th Cir. 1981), "there can be little question that establishing the terms and conditions for removal of

natural resources from its territory . . . is a governmental activity." The court finds that in the instant case BWICLO's acts were the equivalent of establishing terms for the temporary removal of manpower resources from its territory. The commercial act exception does not apply, and BWICLO, as an instrumentality of the member foreign states of the Caribbean Regional Labour Board, along with its officer Edwards, is immune from this court's jurisdiction. 28 U.S.C. § 1604. The motion of BWICLO and Edwards to dismiss plaintiffs' claims against them is accordingly granted.[22]

### V. Government of Jamaica

█ The Government of Jamaica, sued for the acts of its instrumentality BWICLO, moves to dismiss on the same grounds considered by the court in granting BWICLO's motion to dismiss. Applying the principles discussed in the previous section, pp. 371 to 372 & n. 18 *supra,* the court finds that the Government of Jamaica is immune from this court's jurisdiction under the Foreign Sovereign Immunity Act, 28 U.S.C. § 1602

**22.** Although unnecessary in view of the court's finding of foreign sovereign immunity as to BWICLO and as to Edwards acting in his official capacity, the court briefly considers the two defendants' additional arguments for dismissal of plaintiffs' claims against them.

First, the act of state doctrine is inapplicable to BWICLO's alleged conduct in connection with this lawsuit. Although BWICLO's acts were not commercial in character, neither were they pursuant to a particular, formal edict or resolution and "[i]n order to trigger application of the act of state doctrine, the government act concerned must be a public one such as a legislative enactment, regulatory decree, or executive use of the police powers." *Dominicus Americana Bohio v. Gulf & Western Indus., Inc.,* 473 F.Supp. 680, 689 (S.D.N.Y.1979); *cf. Empresa Cubana Exportadora, Inc. v. Lamborn & Co.,* 652 F.2d 231, 237 (2d Cir. 1981) ("The seizure of [the] offices and accounts was a classic act of state. It was carried out pursuant to a formal resolution issued by the Ministry of Labor, who was acting on behalf of the undisputedly sovereign Cuban government.").

Second, the defendants' motions to dismiss plaintiffs' antitrust and civil rights claims for failure to state claims for relief is also granted to the same extent as were the motions of the other defendants on identical grounds. Third, as to plaintiffs' remaining claims, beyond the question of foreign sovereign immunity, plain-

tiffs' antitrust claims against BWICLO and Edwards must be dismissed since foreign states are not "persons" subject to Sherman Act liability, *Hunt v. Mobil Oil Corp.,* 550 F.2d 68, 78 n.14 (2d Cir.), *cert. denied,* 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977); *International Ass'n of Machinists v. OPEC, supra,* 477 F.Supp. at 570–72; *cf. Pfizer, Inc. v. Government of India,* 434 U.S. 308, 98 S.Ct. 584, 54 L.Ed.2d 563 (1978) (foreign sovereign may be a plaintiff in an antitrust action), and plaintiffs' surviving civil rights claim must also be dismissed since there is no reason to distinguish foreign states from either the United States or individual states, neither of which are "persons" liable under the civil rights laws. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (states not "persons" under § 1983); *Thompson v. State of New York,* 487 F.Supp. 212, 228 (N.D.N.Y.1979) (states not "persons" under § 1985(3)); *Morpugo v. Board of Higher Educ.,* 423 F.Supp. 704, 714 (S.D.N.Y. 1976) (United States not a "person" under civil rights laws); *see also District of Columbia v. Carter,* 409 U.S. 418, 429–30, 93 S.Ct. 602, 608–09, 34 L.Ed.2d 613 (1973); *Dellums v. Powell,* 566 F.2d 216, 224 (D.C.Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978) (District of Columbia not a "person" under § 1983).

*et seq.* Defendant's motion is granted and plaintiffs' claims against the Government of Jamaica are dismissed.

## VI. *Florida Secretary of Labor*

■ Plaintiffs allege that defendant Wallace E. Orr, Secretary of the Florida Department of Labor and Employment Security, violated their statutory and constitutional rights by failing effectively to administer an outreach program established pursuant to regulations promulgated under the Wagner-Peyser Act to inform potential migrant farm workers in Florida of job openings available through the interstate clearance system in the New York apple harvest and elsewhere.[23] Orr moves to dismiss pursuant to Rules 12(b)(2) and (6), Fed.R. Civ.P., for lack of *in personam* jurisdiction and failure to state a claim upon which relief can be granted.

Plaintiffs argue that there are two possible bases of personal jurisdiction. First, they assert that Orr has been doing business in New York by virtue of the fact that annually during the years in question hundreds of workers were sent from Florida through the interstate clearance system to New York. Second, plaintiffs assert that Orr's failure adequately to publicize job openings available through the interstate clearance system despite the mandate of statute and regulations constitutes tortious conduct outside New York within the meaning of CPLR § 302(a)(3)(ii). The court finds neither ground adequate.

■ First, the mere participation by the Florida Secretary of Labor in the process by which workers are sent from Florida to New York does not subject Orr to the jurisdiction of New York courts. It has been held in analogous cases that considered the jurisdictional sufficiency of shipping goods into New York that "[c]ertainly the mere shipment of goods into the State of New York regardless of the amount thereof does not constitute doing

business in the State of New York." *McNellis v. American Box Board Co.,* 53 Misc.2d 479, 483, 278 N.Y.S.2d 771, 775 (Sup.Ct. Onondoga Co. 1967). Second, jurisdiction cannot be predicated on Orr's allegedly tortious failure properly to publicize in Florida job openings available in New York and elsewhere because it was not reasonably foreseeable, as required by CPLR § 302(a)(3)(ii), that such failure would have consequences in New York. The only foreseeable consequences were in Florida, where Florida migrant workers may have been deprived of job opportunities. To assert jurisdiction on the basis of a "foreseeable" link between inadequate publicity in Florida, the consequent importation of foreign workers into New York, and the ultimate impairment of employment conditions in New York, would offend due process " 'notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoting Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). Orr's motion to dismiss for lack of *in personam* jurisdiction is accordingly granted. The court need not consider Orr's alternative grounds for dismissal.

## VII. *Puerto Rico Secretary of Labor*

The Puerto Rican plaintiffs claim that Carlos S. Quiros, Secretary of Labor of the Commonwealth of Puerto Rico, deprived them of job opportunities in the New York apple harvest and elsewhere in violation of plaintiffs' rights under the Immigration and Nationality Act, the Wagner-Peyser Act and the Fourteenth Amendment (1) by imposing conditions provided for in Puerto Rico regulations on their contracts of employment for work outside Puerto Rico and (2) by mismanaging the placement process of Puerto Rican workers in the New York apple harvest. Quiros moves to dismiss plaintiffs' claim pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim for

---

**23.** In their memorandum in opposition to Orr's motion to dismiss, plaintiffs assert that they are also claiming that Orr violated his duty to insure that migrant workers from Florida were afforded proper treatment during the New York apple harvest. The complaint, however,

states no such claim against defendant Orr, and even if it did the claim would fail since the labor-supply state has no duty to monitor or improve employment conditions in the destination or demand state. *Vazquez v. Ferre,* 404 F.Supp. 815, 821 (D.N.J.1975).

relief and for failure to exhaust administrative remedies, and in the alternative to sever and transfer venue to Puerto Rico pursuant to 28 U.S.C. § 1404.

 Judicial review of the Puerto Rican plaintiffs' claim against the Puerto Rico Secretary of Labor is precluded by plaintiffs' failure to exhaust their administrative remedies. The doctrine of exhaustion of administrative remedies requires that parties proceed through prescribed administrative procedures before seeking judicial review of adverse agency action. *FCC v. Schreiber*, 381 U.S. 279, 296–97, 85 S.Ct. 1459, 1470–71, 14 L.Ed.2d 383 (1965); *Myers v. Bethlehem Shipping Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). The Supreme Court in *McKart v. United States*, 395 U.S. 185, 193–94, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969), stated that exhaustion requirements are to be flexibly applied in view of the applicable statute and the particular administrative scheme. The court must also consider how enforcement will enhance the policies underlying the doctrine, such as agency autonomy and judicial economy. *See Comment, The Exhaustion Doctrine and NEPA Claims*, 79 Colum.L.Rev. 385, 386–87 (1979). In the instant case, 20 C.F.R. § 658 prescribes the procedures for raising complaints regarding the management by state agencies of the interstate clearance system. Plaintiffs have bypassed those procedures, thereby depriving the Puerto Rico Department of Labor of the opportunity to correct its alleged errors. The court therefore declines to review the challenged conduct of the Puerto Rico Secretary of Labor.

### Conclusion

In sum, the court makes the following rulings.

A. *Claims Dismissed*

1. Plaintiffs' claim under § 1 of the Sherman Act is dismissed as against the New York apple defendants, the Florida sugar defendants and William H. Meranda insofar as the claim is based on wage rates.

2. Plaintiffs' claim under § 2 of the Sherman Act is dismissed as against the New York apple defendants, the Florida sugar defendants and William H. Meranda.

3. Plaintiffs' claim under § 4 of the Clayton Act is dismissed as against the New York apple defendants, the Florida sugar defendants and William H. Meranda.

4. Plaintiffs' claims under 42 U.S.C. §§ 1981 and 1983 are dismissed as against the New York apple defendants and the Florida sugar defendants.

5. The civil rights claim of those 18 plaintiffs who previously brought actions against some of the New York apple defendants based on their experiences in the 1978 New York apple harvest is dismissed against their respective employers.

6. Plaintiffs' antitrust claim is barred to the extent that it is based on events that occurred prior to October 22, 1975. Plaintiffs' civil rights claim is barred to the extent that it is based on events that occurred prior to October 22, 1976.

7. The complaint is dismissed against the Farm Labor Executive Committee.

8. The complaint is dismissed against the British West Indies Central Labour Organization.

9. The complaint is dismissed against Harold F. Edwards, insofar as he is sued in his official capacity.

10. The complaint is dismissed against the Government of Jamaica.

11. The complaint is dismissed against Wallace E. Orr.

12. The complaint is dismissed against Carlos S. Quiros.

B. *Motions Denied*

1. The motion of the New York apple defendants, the Florida sugar defendants and William H. Meranda to dismiss plaintiffs' claim against them under § 1 of the Sherman Act is denied in part.

2. The motion of the New York apple defendants and the Florida sugar defendants to dismiss plaintiffs' claim against them under 42 U.S.C. § 1985 is denied.

3. The motion of the New York apple defendants for a more definite statement is denied.

4. The motion of the Florida sugar defendants to dismiss for lack of *in personam* jurisdiction is denied.

5. The motion of the Florida sugar defendants to dismiss for improper venue is denied.

6. The motion of the Florida sugar defendants for summary judgment dismissing plaintiffs' claims against them under the antitrust and civil rights laws is denied.

7. The motion of William H. Meranda to dismiss for lack of *in personam* jurisdiction is denied.

8. The motion of William H. Meranda to dismiss for improper venue is denied.

Plaintiffs shall serve and file within 20 days an amended complaint incorporating the changes made necessary by this decision.

So Ordered.